Opinion of the court delivered by
Judge Whyte.
Blair obtained an order of the county court, for the establishment of a ferry across the Tennessee river, in 1817; he states he hath held the ferry ever since that time, keeping up good boats and giving due attendance; that on the first establishment of the ferry it was of little value, but oí late years has become valuable. In 1807, Carmichael obtained, by applying to the court, an order for a ferry also, near Blair’s ferry. Blair lives on the south side *307 of the river,owning the land there,and also theland opposite on the north side, where his landing is. Carmichael, owns the land on the north side of the river, a little below Blair’s landing on that side, and also lives on the same side. A public road on the north side of the river, runs through Carmichael’s land, passing by his dwelling house to the river at his landing, then runs up the river 300 or 400 yards to Blair’s landing; that the width of the river at Blair’s ferry, is somewhat less than at Carmichael’s landing on the north side, and the water is better, running slower. There is no landing on the south side of the river opposite to Carmichael’s landing on the north, his boat being obliged to go up the river to Blair’s landing on the south side for his landing, so that the diagonal course of Carmichael’s boat to the south landing, whether performed in a straight or circuitous line, is of necessity longer than that of Blair’s in making a passage over the river. Blair, by certiorari, brought up the question on Carmichael’s order to the circuit court, where the order of the county court was affirmed, and an appeal taken to this court.
For the defendant, Carmichael, it is contended, that the jurisdiction of the county court is exclusive. We are of opinion, that the legislature having given to the county courts the jurisdiction of establishing, continuing and discontinuing roads and ferries within their respective counties, have thereby considered them the best qualified for the exercise of the powers so conferred; their local residence presumes a knowledge of the public interest in these matters in general, and as having the best means of acquiring information upon, and examining the merits of the respective applications that may be made to them on the subject. It might perhaps have been the original intention of .the legislature, that this jurisdiction in the county courts should be exclusive. Be that as it may, the superior courts of this State, and after them the circuit courts, have undertaken to control the exercise of their power on this jurisdiction in some particular instances; and this court, the jurisdiction being set- *308 tied, has the right of examining the judgment of the cjrcujf. an¿ consequently the decision of the county court In doing so, this court as a revising tribunal, must not forget the latitude of discretion necessarily bestowed on the county courts in the exercise of this jurisdiction by them, and the superior means possessed by them for the correct exercise of it, compared to what this court may be reasonably supposed to possess. This court however, is able to distinguish betwccen a reasonable exercise of jurisdiction, and such an exercise as might be considered a gross departure from it; in this last case the corrective powers of this court would be called into action. Is the case now presented to this court of this kind upon its circumstances? The plaintiff, Blair, contends it is, and raises the following objections to Carmichael’s order: 1st, that he, Blair, has the oldest established ferry. As to this objection it is to be observed, that the policy of the law respecting ferries has changed much since the act of 1764, ch. 3, sec. 4, which enacts, that if any person not empowered to keep a ferry, transports another person for pay, within ten miles of a ferry on the river, he shall forfeit and pay to the nearest ferryman 20 shillings, to be recovered by warrant, &c. The monopolizing spirit" of this act was broken by the act of 1784, ch. 14, by declaring a more liberal policy. It enacts, “that from time to time, and at all times hereafter, the courts of the several counties in this State, shall have full power and authority to appoint and settle ferries and to order the laying out public roads when necessary.” The beneficial effects resulting from this change of polic3, introduced by the act of 1784, became so apparent, and its advantages to the public so great, that the legislature again in 1807, felt themselves bound to interfere once more, and by another enactment, to promote the still further extension of the policy, not giving a power only, but by enforcing its execution by imposing it as a duty. Thus, the 25th chapter of that act of Assembly, sec. 1, says, “that from and after the passing of this act, it shall be the duty of the several county courts *309 in this State to authorize the owner or owners of ferry landings, or owners of land on each side of rivers where ferries have been established, or hereafter shall be, to erect a ferry or ferries, under the same rules, &c. &c. and the said ferry keepers are hereby authorized "to land their boats on the opposite banks of the rivers.” . And ■ sec. 2, says, “that where a public road crosses a river, and where the banks are owned by different persons, each person shall be authorized to keep a ferry and to allow the holder of the opposite bank free and uninterrupted privilege of landing his boat, on either of the banks,” &c. Thus we see, that the uniform tendency of the acts of Assembly, subsequent to the act of 1764, is to countenance the free and liberal spirit of laudable competition on the subject matter of this cause. Indeed, the last act of 1807, has carried it to its maximum, and it is difficult to suppose a case that is fair, which would be out of its purview; it clearly embraces the present.
Another objection of Blair is, that the establishment of Carmichael’s ferry would by drawing off a part of the emoluments from his ferry, be discouraging to his exertions, and also render him less able to discharge his duty.
All experience is against this objection; every day’s observation confutes it, and stands in opposition to its correctness. We find from the infirmity of human nature, that security degenerates into sloth, and a want of stimulus is followed by carelessness and inattention. A powerful incentive, if not the best to the faithful discharge of duty, is interest; and the endangered profits of a lucrative ferry, give a more forcible present impulse, than the future coercion of the bond- given to the county court for performance.
Another objection is, that Carmichaels’ ferry, from swift-ter water and greater length of passage, is of less public benefit.
The answer to this objection is, that the public ■will judge for themselves, when they have their choice, and if they choose the worse, the blame is their own. The spirit, as well as the requisition of the acts of Assembly, is for them to have this choice. .
*310 Let the judgment of the circuit court affirming the order of the county court, granting a ferry to Carmichael, be affirmed.
Judgment affirmed.